Filed 10/2/14  P. v. Lanier CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STANFORD LANIER,<br><br>    Defendant and Appellant. | B253024<br><br>(Los Angeles County<br>Super. Ct. No. MA060211 ) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  James B. Pierce, Judge.  Affirmed.

Dale E. Manolakas, under appointment by the Court of Appeal for Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Jonathan J. Kline and Taylor Nguyen, Deputy Attorneys General for Plaintiff and Respondent.

_____

## INTRODUCTION

A jury found Stanford Lanier guilty of second degree commercial burglary, in violation of Penal Code section 459.  On appeal, Lanier contends: (1) the trial court prejudicially erred when it failed to grant a continuance to locate a witness whom he expected to testify on his behalf; and (2) the trial court prejudicially erred when it excluded a defense investigator's testimony regarding the witness's out-of-court statements.  We affirm the judgment.

## FACTUAL BACKGROUND

On July 18, 2013 Lanier and Rosalyn Jones were arrested at a Walmart retail store in Lancaster.  That night, Lanier and Jones entered the store and approached the cash register with a shopping cart "full of items or merchandise."  During the check-out, Jones and Lanier used a divider to split the items into two separate transactions.

The first transaction consisted of various food items, which Jones paid for using an EBT card.  Lanier then placed the purchased items into their cart.  During the second transaction, Jones placed beer and a "blender or mixer" on the counter.  She told the cashier that she wished to return the mixer and indicated that she intended to use the refund to pay for the rest of her items.  The cashier told Jones that she would have to go to customer service to return the item.  When Jones stated that she did not want to hold up the line, the cashier offered to suspend the second transaction until Jones returned to pay for it.[1]  Jones left her wallet at the cash register and "grabbed and took [the mixer]" to customer service.  When Jones left, Lanier remained at the register while the cashier "rang up" the rest of the items.  As the cashier scanned the remaining unpurchased items, Lanier loaded them into the shopping cart with the other purchased items from the first transaction.

---

[1]  The store's policy allows cashiers to place transactions on hold for up to thirty minutes for various reasons.  If a customer never returns to complete the transaction, the items are then placed back on the store shelves.

That evening, Los Angeles County Deputy Sheriff Joshua Busch was on foot patrol at the Walmart store and was standing near the cash registers at the time of Lanier's transactions. He did not see Jones at the register, but noticed Lanier looking around the store and believed he was "scanning" for surveillance cameras. Lanier appeared to stop when he realized Deputy Busch was watching him. When Deputy Busch walked to a different part of the store, Lanier grabbed the wallet that Jones left at the cash register and walked away with the cart full of merchandise, including the remaining unpurchased items. Lanier and Jones then left the store together without paying for that merchandise.

Shortly thereafter, a store manager alerted Deputy Busch that Lanier and Jones had stolen beer and the mixer. Deputy Busch left the store and found Lanier and Jones in the parking lot, loading the merchandise into a vehicle. Both were arrested.

On November 21, 2013, Lanier's case was transferred from Lancaster to the Long Beach courthouse between the morning and afternoon sessions. Jones was subpoenaed to be in court and defense counsel Mario Barrera intended to call her as a witness at trial. Jones stated on the phone to Barrera that "she would be arriving at the Lancaster courthouse in [Department] A18 at 1:30." After the case was "sent to Long Beach in the afternoon," Barrera "called to A18, who indicated that [Jones] had not shown up." In a subsequent conversation with the trial court, Barrera indicated that, other than that one telephone contact on November 21, Barrera had "not had any further contact with [Jones]."

On November 26, 2013, the second day of Lanier's trial, Barrera made two requests for a continuance in an attempt to secure two separate witnesses. The first request was made to secure an eyewitness police "ride-along" that the People did not intend to call and did not know about until "about the same time" as the defense. The court believed that the ride-along's testimony would be cumulative and denied the request stating, "[i]n view of the scheduling that I have given to this jury, namely, that it is going to be two days this week and at the very most two or three days after this

3

weekend, then I'm not going to continue this matter past that time period. I'm going to go in an orderly fashion. I told [the jury] there was a chance that we may be finished by tomorrow. It looks like we may very well be."

Barrera then requested a second continuance to locate Jones, who had yet to appear before the court. Although a body attachment had been issued for Jones, the court also denied this continuance, stating "[a]gain, as I indicated to you yesterday, unless you have some definite lead that you're going to be able to produce her this afternoon, I'll give you a continuance until then or if she is available tomorrow, if you have some lead on her or something definite. I'm not merely going to grant a continuance until when and if you bring her in."

When the court denied the latter continuance, Barrera sought to introduce out-of-court statements that Jones made to defense investigator Victoria Tellez and proposed that the court allow Tellez to testify. Barrera explained that during an August 26, 2013 phone conversation, Jones allegedly told Tellez that "'[Lanier] had no idea that [Jones] was going to Walmart to steal, nor did [Lanier] help her steal anything, . . . 'this was all her' . . . doing[and Lanier] had no idea what she was up to.'" Barrera argued that: (1) because Jones was "unavailable" pursuant to Evidence Code section 240; and (2) "given the fact that [Jones] knew at that time that these statements were against her penal interests . . . those now [could] be brought in as a declaration against interests under Evidence Code 1230."

In response, the prosecution argued that Jones's statements to Tellez were inherently unreliable, and "inadmissible because [they are] all speculation about what [Lanier] may or may not have known[,]" and also contradicted statements Jones made to Deputy Busch that it was "[Walmart's] fault they forgot to ring me up."

The court denied Barrera's request to admit Tellez's testimony because "the real test of reliability can only be demonstrated through cross-examination" and since Jones was never cross-examined, the testimony was "inherently unreliable." The court rejected Barrera's assertions that Evidence Code sections 1230 and 240 were applicable. It found

4

Jones's alleged statements to be "self-serving . . . in many regards" since she had not been advised of her Fifth Amendment rights and also found that Jones's unavailability "[had] not been demonstrated to the court" because it "[did] not know the good faith efforts that [had] been made to try to bring her to court."

## DISCUSSION

### I. Request for Continuance

Lanier first contends that the trial court abused its discretion and prejudicially erred when it denied his request for a continuance to locate Jones. We disagree.

The Penal Code establishes a general policy in criminal cases against continuances and provides that "cases shall be set for trial and heard and determined at the earliest possible time." (Pen. Code, § 1050, subd. (a).) Section 1050, subdivision (e), provides that continuances will be granted only upon a showing of good cause. (*People v. Howard* (1992) 1 Cal.4th. 1132, 1171 (*Howard)*.) "To establish good cause for a continuance, defendant ha[s] the burden of showing that he had exercised due diligence to secure the witness's attendance, that the witness's expected testimony was material and not cumulative, that the testimony could be obtained within a reasonable time, and that the facts to which the witness would testify could not otherwise be proven." (*Ibid*; citing *Owens v. Superior Court* (1980) 28 Cal.3d 238, 250-251.) In determining good cause, trial courts are afforded substantial discretion in granting or denying requests for continuance. (*People v. Seaton* (2001) 26 Cal.4th 598, 660.) Trial courts must consider "not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion." (*People v. Laursen* (1972) 8 Cal.3d 192, 204.)

Here, Barrera made minimal efforts to locate Jones. After subpoenaing her for trial, Barrera spoke with Jones on the telephone once, days before the mid-trial request for a continuance. That phone conversation was his only contact with her throughout the course of the entire trial process. The record is silent on any efforts made in locating her

5

once she failed to appear at either the Lancaster or Long Beach courthouses. There is no indication Barrera or an investigator went to Jones' house to find her. There was no showing that a continuance would lead to securing Jones's testimony in a reasonable amount of time. Like the unsuccessful defendant in *Howard*, Lanier "could only offer the prospect of further delay while he searched" for her. (*Howard*, *supra*, 1 Cal.4th at p. 1171.) The record indicates that the trial court acknowledged this uncertainty on at least two separate occasions and that Lanier had opportunity over the course of three days to locate and secure Jones once the trial began. Though the trial court justifiably considered the burden on the court and the jurors in its decision, it was not the sole reason for denying the continuance. There was no abuse of discretion.

## II.     Exclusion of Out-of-Court Statements

When the trial court refused to grant Lanier a continuance to locate Jones, he attempted to introduce evidence of out-of-court statements Jones made to defense investigator Tellez. Specifically, Jones' statement that she planned the burglary and did not tell Lanier of the plan. Lanier contends the trial court abused its discretion when it refused to admit the testimony pursuant to Evidence Code section 1230. We disagree.

Generally, hearsay evidence is inadmissible. (Evid. Code, § 1200.) There are, however, a number of exceptions to this rule. (*Ibid*.) In California, "[e]vidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement . . . so far subjected him to the risk of . . . criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." (Evid. Code, § 1230.) Our high court has "construe[d] the exception . . . to be inapplicable to evidence of any statement or portion of a statement not itself specifically disserving to the interests of the declarant." (*People v. Leach* (1975) 15 Cal.3d 419, 441, fn. omitted; see *People v. Duarte* (2000) 24 Cal.4th 603, 610-611.)

6

A witness is unavailable if "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process." (Evid. Code, § 240, subd. (a)(5).) The California Supreme Court often describes the efforts required by section 240 as involving "'due diligence.'" (*See People v. Fuiava* (2012) 53 Cal.4th 622, 675.) "'[T]he term "due diligence" is "incapable of a mechanical definition," but it "connotes persevering application, untiring efforts in good earnest, efforts of a substantial character." [Citation.] Relevant considerations include "'whether the search was timely begun'" [citation], the importance of the witness's testimony [citation], and whether leads were competently explored [citation].'" (*Ibid.*) As we just pointed out, counsel's efforts to secure Jones's appearance were comprised of serving a subpoena and making a single phone call. That is not untiring efforts of a substantial character. As such, there was no abuse of discretion in ruling the statement inadmissible.

It is also worthy of note that not all of Jones's alleged out-of-court statements to Tellez were "specifically disserving" to her. (*People v. Leach*, *supra*, 15 Cal.3d at p. 441; *People v. Duarte*, *supra*, 24 Cal.4th at pp. 610-611.) While the statement that Jones planned the burglary was inculpatory and disserving to her penal interests, the statement that she did not tell Lanier of her plan to steal was not. The latter statement is the one that would have helped Jones and it was inadmissible. For these reasons, the trial court did not abuse its discretion in excluding the out-of-court testimony.

**DISPOSITION**

The judgment is affirmed.

BIGELOW, P.J.

We concur:

RUBIN, J.　　　　　FLIER, J.

7